RAY, J.
Abraham Brown appeals his convictions for burglary of an occupied dwelling, violation of an injunction for protection against domestic violence, interference with custody, and criminal mischief. He contends that the trial court failed to conduct adequate inquiries pursuant to Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), when Brown expressed his dissatisfaction with court-appointed counsel, and pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), when he *137 asserted his wish to represent himself after the court found no reasonable cause to discharge his attorney. Brown also challenges the sufficiency of the evidence justifying his enhanced sentences as a habitual felony offender (HFO). Concluding that the trial court fully complied with the requirements of Nelson and Faretta, we affirm the convictions and the two non-HFO sentences. Because the State failed to prove Brown’s eligibility for HFO status, we vacate the HFO sentences for Counts One and Three and remand for resentenc-ing, where the State may present additional evidence to support habitualization.

Previous Trials

After the first trial, Brown appealed his convictions. This Court reversed and remanded for a new trial because the trial court failed to conduct an adequate Faret-ta inquiry before accepting Brown’s waiver of his constitutional right to assistance of counsel. Brown v. State, 971 So.2d 270, 271 (Fla. 1st DCA 2008). In the appeal of Brown’s convictions after the second trial, we reversed and remanded because the trial court denied Brown’s unequivocal request to cease self-representation and obtain court-appointed counsel. Brown v. State, 45 So.3d 110, 112 (Fla. 1st DCA 2010). The issues raised in this appeal relate to the third trial.

Adequacy of the Nelson Inquiry

Facts

At a hearing immediately before jury selection on September 12, 2011, Brown informed the court that he did not trust his court-appointed counsel, an assistant public defender. Brown complained that his attorney had not kept promises concerning the filing of certain motions, was not doing what Brown asked him to do, would not come to talk to Brown, had not provided him with a copy of a certain transcript, had filed an untimely motion to disqualify the judge, and had requested a continuance rather than seek dismissal on “speedy trial” grounds. Brown asked the court to discharge counsel. Defense counsel specifically addressed each of Brown’s complaints and explained counsel’s acts and omissions. After a full inquiry involving Brown and his attorney concerning the allegations of ineffective assistance, the trial court determined that no legal basis existed to remove court-appointed counsel and provide a substitute lawyer.

Law

An indigent’s right to court-appointed counsel necessarily includes the right to effective representation by counsel. Nelson, 274 So.2d at 258 (citing Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)). If an indigent asks the trial court to discharge court-appointed counsel before the trial commences, then, to protect the right to effective counsel, the court must inquire about the reason for the request. Nelson, 274 So.2d at 258. If incompetency of counsel is given as a reason, the court should sufficiently inquire of the defendant and the attorney to determine whether reasonable cause exists to conclude that counsel is not providing effective legal assistance. Id. at 258-59. Upon reasonable cause for such belief, the court should make a finding on the record, appoint substitute counsel, and allow sufficient time to prepare a defense. Id. at 259.
If no reasonable basis supports a finding of ineffective representation, then the court should say so in the record and inform the defendant that if he or she discharges original court-appointed counsel, then the State will not be required to appoint another lawyer. Id. Where a defendant continues to demand the dismissal of court-appointed counsel, the trial court has the discretion to discharge the attorney and require the defendant to proceed *138 to trial without representation by a court-appointed lawyer. Id. Whether the trial court conducted an adequate Nelson hearing is reviewed for an abuse of discretion. Kearse v. State, 605 So.2d 534, 536 (Fla. 1st DCA 1992).

Analysis

Our review of the Nelson inquiry supports the trial court’s conclusion that Brown alleged no reasonable basis for finding ineffective assistance to warrant discharging court-appointed counsel. Defense counsel specifically addressed all of Brown’s complaints and adequately explained counsel’s reasons for proceeding as he had done thus far. Because the record amply supports the trial court’s findings and its decision not to discharge counsel, we find no abuse of discretion on the Nelson claim.

Adequacy of the Faretta Inquiry

Facts

On September 12, 2011, after the trial court refused to discharge counsel and appoint a substitute attorney, Brown stated: “Well, I can’t afford to hire an attorney, so the cqurt is forcing me to go pro se again.” Brown clarified: “I’m going pro se.” The judge informed Brown that he had the right to counsel, that an attorney had been appointed to represent him due to Brown’s indigency, and that the State would pay for the legal representation.
Reminding Brown that the proceedings were “at the trial stage now,” the court set forth in meticulous detail the specific ways in which having legal representation would be to Brown’s advantage during the trial. The judge advised Brown that a lawyer has the knowledge and experience of the entire legal process, and would argue on Brown’s behalf and present the best legal arguments for the defense, during the whole trial. The court commented that jury selection is governed by numerous legal procedures that an attorney would understand. Addressing the various aspects of the trial, the judge informed Brown that a lawyer could call and question witnesses, understand the rules of admissibility, present evidence, and ensure that jury instructions are proper. An attorney could advise Brown concerning whether to testify, and the consequences of Brown’s ultimate decision. A lawyer could present opening statements and closing argument, attempt to prevent improper prosecutorial argument, and properly preserve any errors for appellate review. The court told Brown that if he were to be convicted, an attorney may be useful in the sentencing and appellate processes.
Brown expressly stated that he understood these rights. The court warned Brown that he would not be entitled to a continuance merely because of self-representation. Having discussed Brown’s rights, and the pros and cons of representation by an attorney, the court reiterated: “We’re at the trial stage.” When Brown asked whether he would have standby counsel, the judge advised that Brown could have standby counsel, if he requested it. After reiterating Brown’s right to counsel, the court informed Brown that even if he chose to represent himself during the trial, he could still request counsel for sentencing and an appeal.
The court reminded Brown that it is generally unwise for a criminal defendant to represent himself. The judge noted that a pro se criminal defendant is not qntitled to special treatment in court. An attorney can fully research a theory of defense, whereas an inmate’s library access privileges are more limited. Brown stated that he understood his rights. Noting that Brown had elected to proceed pro se in the two previous trials on these charges, the court explained that Brown *139 was not required to possess a lawyer’s skills to represent himself, but he would have to comply with the applicable rules of law and procedure during the trial. When he asked about making objections during the trial, the court replied that Brown could appeal preserved rulings sustaining a State objection or overruling a defense objection.
After Brown stated that he understood what the charges were but did not understand how he was being charged, the prosecutor explained the charges, any lesser-included offenses, and the maximum possible HFO or non-HFO sentences for the felonies. The court advised Brown of the direct and collateral consequences of a conviction and an HFO classification. The judge elicited information that Brown, age 39, can read and write English, is a high-school graduate, and was not presently under the influence of alcohol or drugs. Brown expressed his understanding that appointed counsel would be free, except for an appointment fee.
Having advised Brown of his right to counsel, the advantages of proceeding -with counsel, and the disadvantages and risks of representing himself, the court asked whether Brown was certain that he did not want court-appointed counsel to continue representing him. Brown answered affirmatively that he was sure. The judge advised Brown that if he represented himself, the court could honor any request for standby counsel, who would be available to answer any questions during the course of the trial. The court made oral findings that Brown was fully competent to waive his right to counsel and had done so knowingly and intelligently. The judge reminded Brown that if he wanted to proceed pro se without standby counsel, then Brown was responsible for the organization and content of his ease. To allow Brown additional time to consider his options, the court asked former counsel to remain in the courtroom.
When Brown informed the court that he had not asked for standby counsel, and he asked why previously appointed counsel was present, the judge advised Brown that the court had requested that counsel be present for the jury selection and other trial proceedings. The court reminded Brown that the last time he was tried, he changed his mind. As a precaution, the court wanted the attorney to be ready to step in, if needed and requested by Brown to do so. When the court clarified that previously appointed counsel was not there as Brown’s standby counsel, Brown expressed his understanding of the situation.
The court instructed Brown that he could question the prospective jurors to determine whether they could serve fairly and impartially. The judge explained the rules for peremptory strikes and challenges for cause. Voir dire commenced, and the jury was chosen later on the same morning as this inquiry. Although previously appointed counsel was present for voir dire, Brown did not consult him. At the end of jury selection, the court advised Brown that his former lawyer would be there again the next day for the start of the evidentiary part of the trial, in case Brown changed his mind about counsel. The day’s proceedings ended.
The next morning, September 13, 2011, the trial court immediately asked Brown whether he still wanted to proceed pro se, and he answered affirmatively. Brown adopted previously appointed counsel’s pending motion seeking to prevent Brown from being classified and sentenced as an HFO. Confirming that Brown still wished to represent himself, the court asked whether he wanted to proceed without standby counsel. The court advised that standby counsel would be available during the course of the trial proceedings if *140 Brown had any questions. Brown indicated that he wanted to continue pro se without standby counsel. The court determined that Brown was competent to waive counsel and wanted to proceed without a standby attorney.
After the court explained the purpose of opening statements, the State gave its opening. During his opening remarks, Brown told the jury that he had freely chosen to represent himself. After opening statements, but before the State’s first witness testified, Brown reviewed the evidence and asked the court to wait until previously appointed counsel returned to the courtroom. Between the testimony of witnesses for the prosecution, Brown requested and received permission from the court for him to ask former counsel “something.” At the end of the first day of the evidentiary portion of the trial, when the court asked whether Brown wished to consult with previously appointed counsel before leaving the courtroom, Brown answered affirmatively.
At the commencement of the second day of the evidentiary proceedings, on September 14, 2011, the court asked Brown again whether he still wished to represent himself, and he responded affirmatively. Brown expressed his understanding that a lawyer could be appointed to represent him for free, except for the $150 appointment and representation fee. Brown reiterated his desire to proceed without standby counsel. Brown’s former counsel was present in the courtroom. The judge orally announced that although Brown was representing himself, the court had asked previously appointed counsel to remain in the courtroom during the trial.
The transcript of the evidentiary phase of the trial reflects that Brown represented himself, but he repeatedly availed himself of the opportunity to consult with his former counsel. Brown questioned witnesses. After a colloquy, Brown elected not to testify. At the charge conference, previously appointed counsel furnished Brown with a copy of the Florida Statutes. At the close of all evidence, Brown conferred with his former attorney and renewed his motion for a judgment of acquittal, which was denied. The court also denied Brown’s motions for a mistrial. Brown presented his own closing argument. With Brown’s permission, his former counsel drafted a motion for new trial, which was denied.

Law

“Under the Sixth Amendment to the United States Constitution, a criminal defendant is - entitled to the aid of counsel, not only at trial, but prior to trial at critical periods of the proceedings.” Taylor v. State, 726 So.2d 841, 843 (Fla. 1st DCA 1999) (citing Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). An accused also has the right to represent himself or herself. Kearse, 605 So.2d at 537 (citing Faretta, 422 U.S. at 819, 95 S.Ct. 2525). Florida Rule of Criminal Procedure 3.111(d) addresses “Waiver of Counsel.” Subsections (d)(2) and (d)(3) of this rule state:
A defendant shall not be considered to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry has been made into both the accused’s comprehension of that offer and the accused’s capacity to make a knowing and intelligent waiver. Before determining whether the waiver is knowing and intelligent, the court shall advise the defendant of the disadvantages and dangers of self-representation.
Regardless of the defendant’s legal skills or the complexity of the case, the court shall not deny a defendant’s unequivocal request to represent himself or herself, if the court makes a determi *141 nation of record that the defendant has made a knowing and intelligent waiver of the right to counsel, and does not suffer from severe mental illness to the point where the defendant is not competent to conduct trial proceedings by himself or herself.
Therefore, “[w]hen a defendant indicates that he wishes to waive his right to counsel and represent himself, the trial court is obligated to conduct a Faretta inquiry to determine if he is knowingly and intelligently waiving his right to counsel and is ‘aware of the dangers and disadvantages of self-representation.’ ” Flowers v. State, 976 So.2d 665, 666 (Fla. 1st DCA 2008) (citing Faretta, 422 U.S. at 885, 95 S.Ct. 2525).
Rule 8.111(d)(5) states:
If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel.
See Traylor v. State, 596 So.2d 957, 968 & n. 29 (Fla.1992); Wilson v. State, 76 So.3d 1085, 1088 (Fla. 2d DCA 2011). For a criminal defendant’s right to choose the manner of representation to be meaningful, this right “must apply at least at each crucial stage of the prosecution,” which is “any stage that may significantly affect the outcome of the proceedings.” Traylor, 596 So.2d at 968 & nn. 23-24. The commencement of trial is deemed a crucial or critical stage of the proceedings under rule 3.111(d)(5). Wilson, 76 So.3d at 1088; see Lamb v. State, 535 So.2d 698, 699 (Fla. 1st DCA 1988) (“Trial in every case is a critical stage.”).
We review the adequacy of a Faretta inquiry for an abuse of discretion. Kearse, 605 So.2d at 537; Lamb, 535 So.2d at 698 n. 1. However, “[t]he failure to conduct an adequate Faretta inquiry is per se reversible error.” Flowers, 976 So.2d at 666; see Wilson, 76 So.3d at 1089 (“A trial court’s failure to conduct a Faretta hearing at a critical stage of the criminal proceedings constitutes per se reversible error.”); Case v. State, 865 So.2d 557, 559 (Fla. 1st DCA 2003).

Analysis

On appeal, Brown does not question the adequacy of the full Faretta inquiry conducted immediately before jury selection on September 12, 2011. Rather, he contends that on September 13, 2011, at the beginning of the trial proceedings that day, Faretta required the trial court to remind Brown that he could have court-appointed counsel if he wished, that self-representation entailed certain risks, and that representation by a lawyer would afford Brown certain advantages. Additionally, Brown argues that the court was required to renew its inquiry concerning Brown’s physical and mental health. Brown asserts that on September 14, 2011, the second day of the evidentiary part of the trial, the court erred in failing to renew its inquiry as to all these factors, except to remind Brown that he could have a court-appointed attorney if he wanted one.
The State correctly notes that Brown’s argument rests entirely on the assumption that jury selection is a critical stage of the proceedings, separate and distinct from the other parts of the trial, for purposes of Faretta. Brown cites legal authority for the proposition that, where a defendant has waived the right to counsel, as Brown clearly did after the full inquiry on September 12, the trial court must renew its inquiry at each subsequent crucial or critical stage of the proceedings where the defendant appears without counsel. See Traylor, 596 So.2d at 968 & n. 29. While *142 this general principle is true, it affords Brown no relief under the instant facts.
We find no basis in Brown’s cited cases, in rule 3.111(d), or in any other binding authority, indicating as a matter of law that jury selection is to be considered a separate, crucial stage from the rest of the trial for purposes of determining whether a renewed, full Faretta inquiry is necessary. A trial can be separated into many “stages,” including jury selection, opening statements, the presentation of evidence, closing argument, jury instructions, the verdict, and certain post-trial motions. Taken to its ultimate conclusion, Brown’s reasoning would require a renewed Faret-ta inquiry at the start of each and every component part of the trial. No such constitutional requirement exists. See Knight v. State, 770 So.2d 663, 669-70 n. 6 (Fla. 2000) (“A defendant’s right to have court-appointed counsel discharged and right to represent himself becomes meaningless and a source of gamesmanship if the trial court has to offer counsel to the defendant each time he appears in court.”). Nor will we construe rule 3.111(d)(5) so strictly as to “produce an absurd result.” State v. Roberts, 677 So.2d 264, 265 (Fla.1996).
The record demonstrates that the trial court fully informed Brown, immediately before jury selection, that they were now at “the trial stage.” The judge advised that Brown was entitled to court-appointed counsel or could represent himself for the entire trial proceedings. The court apprised Brown of the advantages of legal representation “during the whole trial” and explained what would happen during the various segments of the trial. The court fully set out the pros and cons of Brown’s representation options, including the numerous risks of proceeding pro se. The court explained that even if Brown chose self-representation during the trial, he could request appointment of counsel for the sentencing and appellate proceedings. The judge ascertained that Brown, fully understanding his rights and options, knowingly and intelligently chose to discharge court-appointed counsel and elected to represent himself during the entire crucial trial stage “with eyes open.” Potts v. State, 718 So.2d 757, 759-60 (Fla.1998); see Langon v. State, 791 So.2d 1105, 1111-12 (Fla. 4th DCA 1999).
To reinforce the court’s instructions that Brown was entitled to counsel during the entire trial if he wished, former counsel was present during the trial as a “constant reminder” to Brown of his right to appointed counsel. See Knight, 770 So.2d at 670. Although Brown orally rejected the offer of standby counsel at the commencement of trial, the trial record is replete with examples of Brown’s consulting with former counsel, availing himself of legal advice, and allowing the attorney to speak on Brown’s behalf, when it served Brown’s advantage. At the beginning of his opening statement, Brown informed the jury that he had freely chosen to represent himself. The record clearly demonstrates that, at the commencement of the critical trial stage, Brown was fully informed of his right to counsel and the advantages of legal representation, but decided to represent himself while knowing the risks of doing so.
The court conducted a proper Faretta inquiry at the beginning of jury selection, advising Brown of his rights for the entire crucial trial stage. No other substantive proceedings intervened, and nothing in the record suggests that Brown’s mental or physical state changed between September 12 and September 13-14, so as to trigger the need for additional questioning regarding his understanding of the trial process. Therefore, it was sufficient under Faretta for the court to proceed on the second and third days of the trial without renewing *143 the full Faretta inquiry at the beginning of each day. See Knight, 770 So.2d at 669-70 & n.6 (concluding that where a defendant has properly waived the right to counsel at a pretrial hearing concerning his rights at the upcoming trial, the trial court can proceed with the stage where counsel was waived without a full renewal of the offer of counsel at the commencement of the trial itself); Langon, 791 So.2d at 1112; McCarthy v. State, 731 So.2d 778 (Fla. 4th DCA 1999); Lamb, 535 So.2d at 699.
Brown misplaces his reliance on Wilson v. State, 947 So.2d 1225 (Fla. 1st DCA 2007), where the trial court failed to conduct an adequate Faretta inquiry before allowing Wilson to represent himself at resentencing, which was a new .critical stage. Id. at 1226-27 & n. 3. Likewise, the instant facts are distinguishable from the trial court’s too-limited inquiry and the absence of factual findings in Davis v. State, 10 So.3d 176, 177-78 (Fla. 5th DCA 2009).

Sufficiency of the Evidence to Prove Eligibility for HFO Sentencing

Facts

The State filed an amended notice of intent to seek HFO classification and enhanced sentences for Brown pursuant to section 775.084, Florida Statutes, based on two prior felony convictions. Before Brown chose to represent himself at the trial, court-appointed counsel moved to preclude HFO classification, citing language in section 775.084(l)(a)2.b., which requires in pertinent part that the felony (for which the defendant is to be sentenced) be committed “within 5 years of defendant’s release from a prison sentence ... or other sentence that is imposed as a result of a prior conviction for a felony or other qualified offense.” At Brown’s request, the trial court reappointed the same public defender to represent Brown in the sentencing phase.
At the sentencing hearing, the prosecution elicited expert testimony from a Jacksonville Sheriffs Office fingerprint technician to establish that Brown had two prior felony convictions. This witness testified that Brown’s fingerprint card matched the Duval County judgment and sentence in Circuit Court Case No. 2000-9190-CF-A for uttering a forged instrument, a third-degree felony, which was entered on August 7, 2000. The “sentence” page stated that the trial court imposed a six-month sentence for felony uttering, with 25 days’ credit. The witness also found a match with the St. Johns County judgment and sentence in Circuit Court Case No. CF94-106 for aggravated assault, a third-degree felony. Brown does not challenge the existence of these prior convictions.
The next witness, Officer Procter, a classification officer with the Jacksonville Sheriffs Office, testified that his duties included attempting to calculate the release dates of persons who are sentenced to the Duval County Jail. To determine whether Brown qualified as an HFO, the State had asked Procter to determine Brown’s sentence and release date for his 2000 conviction for felony uttering. Procter testified that, according to his calculations, November 30, 2000, was the earliest possible date that Brown could have been released from the jail for the felony. Brown had a misdemeanor conviction in Case No. 2000-MM-36585, for which he received a 30-day sentence to run consecutively to the felony uttering sentence. Thus, according to Procter, Brown’s overall sentence could have expired later than November 30. The witness testified that Brown was actually released from jail for both the misdemeanor and the felony on January 4, 2001. Procter acknowledged that entitlement to gain time, or loss of gain time for a disciplinary infraction, constituted variables that can affect the *144 amount of time actually served on a sentence. The witness agreed that, “presumably,” Brown would have earned some gain time on the misdemeanor as well as the felony.
On cross-examination, Officer Procter stated that in preparing to testify, he relied on “our operational guidelines that were in effect at the time for gain time,” as well as a review of “old files,” including a Jacksonville Sheriffs Office printout. Procter believed that the overall “expiration of sentence” date was January 4, 2001. These were not file documents that Procter had originally prepared, and this type of printout is no longer used by the sheriffs office. Apparently, one page of the printout showed a stamp indicating that “a JB,” not Procter, filed something into the computer. On December 7, 2011, approximately one week before the sentencing hearing, Procter made his own retroactive calculations using an Excel spreadsheet relying on the classification guidelines that were in effect at the time of the 2000 sentence for felony uttering. His calculations commenced with the August 7, 2000, start of the sentence for felony uttering and factored in various entitlements to gain time. He also considered the 30-day consecutive sentence for the misdemeanor. Procter acknowledged that none of the old documents on which he relied to make his calculations mentioned felony uttering; the documents addressed only the “overall end of sentence release date” for the felony and the misdemeanor combined.
Relying solely on Officer Procter’s recent personal calculations based on the old documents, the prosecutor argued that, given the August 7, 2000, sentencing date for felony uttering, November 30, 2000, was the earliest date that Brown could have been released. The State noted that the November 23, 2005, commission of the felonies for which Brown was to be sentenced fell within five years of November 30, 2000, for purposes of the HFO statute.
Defense counsel defended his motion to preclude HFO' classification on the grounds that the State did not present “definitive proof’ of the expiration date for the felony uttering sentence. Counsel noted that the classification officer had no prior knowledge of the old documents on which he relied. Rather, Officer Procter attempted to retroactively calculate what factors may have been relevant in determining when the sentence expired. While acknowledging that Brown had a conviction for felony uttering, counsel challenged the lack of any record evidence as to the specific date when the felony uttering sentence ended. The defense argued that, without proof of the date of Brown’s release from supervision for felony uttering, the prosecutor was relying on speculative “number crunching”: the State could not meet its burden to satisfy the statutory requirement that the date of the current offenses be within five years after Brown’s release from the qualified offense. Counsel noted that the State had not presented either a live custodial witness or documentary evidence attesting to the accuracy of its purported records on the critical issue concerning the release date.
The trial court denied the motion to preclude HFO classification. Relying on Brown’s judgments and sentences in Case Nos. 2000-9190-CF-A and CF-94-106 as qualified offenses, the court determined that one of them occurred within five years of the offenses for which Brown was to be sentenced, that he had not been pardoned for. either offense, and that neither offense had been set aside. The court found by a preponderance of the evidence that Brown met the criteria for HFO classification, that he was a danger to the community, and that it was necessary for the protection of the public to sentence him as an *145 HFO. The judge adjudicated Brown guilty and imposed HFO sentences of 30 years’ incarceration (Count One) and 10 years’ incarceration (Count Three).

Law

Section 775.084, Florida Statutes, sets out the criteria for HFO classification. The language qualifying a defendant as an HFO — if the felony for which he or she is to be sentenced occurred within five years of release from “lawfully imposed supervision or other sentence that is imposed as a result of a prior conviction of a felony or other qualified offense” — appears in section 775.084(l)(a)2.b. The State had the burden to provide record evidence of Brown’s eligibility for HFO classification and sentencing. Edison v. State, 848 So.2d 498, 499 (Fla. 2d DCA 2003); Boyd v. State, 776 So.2d 317, 318 (Fla. 4th DCA 2001) (reversing and remanding for resen-tencing, where the evidence was insufficient to prove defendant’s release date from prison).

Analysis

The parties agree it is reversible error to classify and sentence a defendant as an HFO without substantiated proof of eligibility. See Sanders v. State, 765 So.2d 161, 162 (Fla. 2d DCA 2000). It is well-established that a trial court errs in classifying a defendant as an HFO if the State fails to furnish substantiated proof of the date of the current felony on which the defendant is to be sentenced, and the date the defendant was released from prison or other supervision imposed for the last felony conviction. See Lowenthal v. State, 699 So.2d 319, 320 (Fla. 2d DCA 1997).
In challenging the sufficiency of the State’s proof, Brown cites Gray v. State, 910 So.2d 867 (Fla. 1st DCA 2005), in which the State asked the trial court to impose a prison releasee reoffender (PRR) sentence. To prove PRR eligibility, the State had to present competent evidence that Gray had been released from prison no more than three years before committing the offense for which the PRR sentence was imposed. Id. at 868. The State’s sole basis for proving Gray’s prison release date was a document that appeared to be on Florida Department of Corrections (DOC) stationery, on which was printed or typed a DOC records management analyst’s signed declaration or affirmation certifying that the seal in the letterhead was official and that Gray was released on September 30, 2000. Id. at 868-69. Gray’s counsel objected to the document because it was not self-authenticating and did not fall within any hearsay exception. Id. at 869. The trial court admitted this document into evidence and found that Gray qualified for enhanced sentencing as a PRR based on the release date listed in this document. Id.
We noted in Gray that “[cjomputer printouts, like business records, are admissible if the custodian or other qualified witness is available to testify as to manner of preparation, reliability and trustworthiness of the product.” Id. & n. 1 (quoting Pickrell v. State, 301 So.2d 473, 474 (Fla. 2d DCA 1974)); Campbell v. State, 949 So.2d 1093, 1094 (Fla. 3d DCA 2007); Cofield v. State, 474 So.2d 849, 851 (Fla. 1st DCA 1985). We concluded in Gray that the State failed to establish a proper predicate to admit this statement into evidence under any hearsay exception. The purported DOC document did not identify the official record, if any, on which it relied, did not state that it was a true and correct representation of any record, and did not say where or in whose custody any original official or business record was kept. 910 So.2d at 869. Given the State’s reliance wholly on inadmissible hearsay regarding Gray’s release date from prison, which was an essential requirement for PRR sentencing, we vacated the sentence and remand *146 ed for resentencing. Id. at 870; accord Yisrael v. State, 993 So.2d 952, 961 (Fla.2008) (approving Gray “to the extent that it holds that DOC release-date letters, standing alone, constitute inadmissible hearsay”).
To support our holding in Gray, we cited King v. State, 590 So.2d 1032 (Fla. 1st DCA 1991), in which we held that the testimony of King’s parole and probation officer at the HFO sentencing hearing, that King had been released from prison on a date less than five years before the date on which King committed the offense for which he was to be sentenced, was inadmissible hearsay. Id. at 1033. The evidence of King’s release date from his last prior felony conviction consisted of the testimony of the officer. We noted, however, that cross-examination disclosed that this officer’s testimony was based entirely upon a DOC computer printout, of which the officer was not the custodian and as to which the officer had no knowledge of the method of preparation or the reliability of the printout. Id. To overcome a hearsay objection to the' officer’s testimony in King, the State had to comply with section 90.803(6), Florida Statutes. The State failed to do so, given the officer’s noncustodial status and inability to testify regarding the manner of preparation and reliability. Without this improperly admitted testimony, the evidence was legally insufficient to establish King’s eligibility for HFO sentencing. We vacated King’s HFO sentence and remanded for resen-tencing. 590 So.2d at 1033.
Brown’s attorney argued the lack of reliability and authenticity of the out-of-court statements on which Officer Procter relied to establish an essential requirement for classifying and sentencing Brown as an HFO. The officer was not the custodian of the old files or the operational guidelines, none of which mentioned felony uttering. Significantly, the State introduced no documentation showing an actual release date on the felony uttering charge. Someone other than Officer Procter had prepared and filed the old printout. Procter’s recent personal calculations consisted of what he believed Brown must have earned for gain time after being sentenced for felony uttering, and when Brown must have been released for that charge, based on the guidelines in place a decade earlier. Given this scant record, we find no meaningful distinction between the insufficient documentation in Gray and King and the purported information that was the State’s sole basis for establishing Brown’s prison release date for felony uttering. The State failed to meet its burden to provide substantiated proof of Brown’s eligibility for HFO classification and sentencing.
For the aforementioned reasons, we affirm Brown’s convictions and his non-HFO sentences, vacate his HFO sentences, and remand for resentencing. Our holding does not preclude the State from presenting sufficient evidence at resentencing to support HFO sentencing. State v. Collins, 985 So.2d 985, 988-89 (Fla.2008); Joppy v. State, — So.3d —, 2013 WL 1749509, 38 Fla. L. Weekly D892 (Fla. 1st DCA 2013); Armstrong v. State, 98 So.3d 779 (Fla. 4th DCA 2012).
AFFIRMED in part; REVERSED and REMANDED in part.
LEWIS and CLARK, JJ., concur.