# Supreme Court of Florida

_____

No. SC13-820
_____

**RONALD KNIGHT,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC14-567
_____

**RONALD KNIGHT,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[December 15, 2016]

PER CURIAM.

Ronald Knight appeals an order of the circuit court denying his motion to

vacate his conviction of first-degree murder and sentence of death filed under

Florida Rule of Criminal Procedure 3.850[1] and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the postconviction court's denial of relief and deny habeas relief.[2]

**FACTS**

After a nonjury trial, Knight was convicted of first-degree murder in the 1993 shooting death of Richard Kunkel. Knight v. State, 770 So. 2d 663, 664 (Fla. 2000). He was also convicted of armed robbery, burglary of a dwelling, and grand theft of an automobile in connection with the crime. Id. "Knight was sentenced to death for the first-degree murder conviction, life imprisonment for the armed robbery conviction, fifteen years for the burglary of a dwelling conviction, and five years for the grand theft conviction." Id. During the guilt phase, Knight represented himself,[3] with attorney Jose Sosa acting as standby counsel. Id. For

_____

1. The parties have stipulated that rule 3.850 governs this case.

2. Knight has also filed a supplemental brief seeking relief under the United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016). However, Knight waived his penalty phase jury and, thus, is not entitled to relief. Brant v. State, 197 So. 3d 1051, 1076 (Fla. 2016); Mullens v. State, 197 So. 3d 16, 39 (Fla. 2016), petition for cert. filed, No. 16-6773 (Nov. 4, 2016). As such, we reject Knight's Hurst claim without further discussion.

3. Knight had previously discharged his court-appointed guilt phase counsel, Ann Perry, on October 31, 1997. Knight, 770 So. 2d at 666-68.

the penalty phase, Knight was represented by Sosa.  Id.  On direct appeal, we described the facts as follows:

> The evidence presented during the guilt phase indicated that Knight and two accomplices,[4] Timothy Peirson (Peirson) and Dain Brennault (Brennault), [n.2] agreed that they would go to a gay bar, lure a man away from the bar, and beat and rob him.  The three found Richard Kunkel (Kunkel) and invited him to go to a party with them.  Kunkel was driving his own car and followed Knight and the others to Miami Subs.  After stopping to eat, the three convinced Kunkel to leave his car parked there and ride to the party with them.  Knight then drove to a secluded area where they stopped twice and got out of the car to urinate.

> > [N.2]  Peirson received three years in prison and Brennault received five years' probation.  The evidence revealed neither of them knew Knight planned to kill Richard Kunkel.

> Before they got back into the car after their second stop, Knight pointed a gun at Kunkel and told him to turn around and take off his jeans.  As Kunkel was complying, Knight fired one shot striking Kunkel in the back.  Kunkel fell to the ground and began crying for help.  Knight then ordered Brennault and Peirson to search Kunkel's pockets.  Peirson complied, but Brennault refused.  Knight and Peirson then dragged Kunkel's body out of the road.  They left Kunkel to die beside a canal where his body was later discovered.  Knight threatened to kill Peirson and Brennault if they told anyone about the murder.
> Later that night, the three men went back to Miami Subs where they had left Kunkel's car.  Knight then stole Kunkel's car and took it for a joy ride to see how fast it would go.  Some time later that evening, the three men broke into Kunkel's house and stole various items.  [n.3]

---

4.  The record indicates the correct spelling of the accomplices' last names to be "Pearson" and "Brennalt."  We will refer to them accordingly.

[N.3] Knight took Kunkel's keys and wallet from him after he shot him. He got Kunkel's address from his driver's license.

When Peirson and Brennault were first questioned about the incident by the police, they denied any knowledge of the murder; however, both men later confessed. Knight bragged about the murder to Christopher Holt. Peirson, Brennault, and Holt all testified against Knight during the guilt phase of the trial.

During the penalty phase, the State presented evidence that Knight had previously been convicted of another murder occurring under very similar circumstances. The other aggravating factors presented and relied upon by the trial judge were that the murder occurred while Knight was engaged in the commission of a robbery, the murder was committed for pecuniary gain, and the murder was cold, calculated, and premeditated. The trial court merged the "committed during a robbery" and "for pecuniary gain" aggravators. Knight presented some mitigation, the most significant of which was expert witnesses who testified that Knight suffered from a paranoid disorder that was exacerbated by his unstable childhood. The court gave this mitigating factor considerable weight. Knight also presented mitigating evidence that he had the support and love of his mother, brother, and sisters and that the death penalty would be disparate treatment because his cofelons received much lighter sentences. The court gave these factors little weight.

Id. at 664-65. On appeal, Knight argued that the court erred in (1) allowing Knight to represent himself; (2) failing to renew its offer of court-appointed counsel at every critical stage of the proceeding; and (3) considering Knight's prior murder conviction as an aggravating factor in sentencing him to death because the other murder occurred after Kunkel's murder. Id. at 665. We found all of Knight's arguments to be without merit and affirmed his convictions and sentences. Id.

- 4 -

## PROCEDURAL HISTORY

Knight was originally charged—in circuit court case number 1994-CF-4855 ("the 1994 case")—with second-degree murder in relation to Kunkel's death. In that case, Shirley DeLuna served as the prosecutor, and Jose Sosa represented Knight. However, on January 3, 1995, the State entered a nolle prosequi, dismissing the case. On December 8, 1995, subsequent to the dismissal of the 1994 case, Knight was convicted of the first-degree murder in another case for the death of Brendan Meehan under unrelated circumstances ("the Meehan case"). Andrew Slater prosecuted the Meehan case and also represented the State in the instant postconviction proceedings. On May 8, 1997, Knight was re-indicted in circuit court case number 1997-CF-5175 (the instant case), for Kunkel's murder— the same crime as in the 1994 case, except this time he was charged with first-degree murder. The 1994 case and the instant case will be collectively referred to as "the Kunkel cases."

On October 31, 1997, Knight discharged Ann Perry, his court-appointed guilt phase counsel in this case, and kept Sosa as penalty phase counsel. Id. at 666. On January 8, 1998, Knight also discharged Sosa, but Sosa was reappointed as standby counsel for the guilt phase on or around February 18, 1998. Knight's nonjury trial in the instant case was held from March 11, 1998, through March 16, 1998. On April 15, 1998, the first day of Knight's nonjury penalty phase hearing,

Sosa was reappointed as penalty phase counsel, per Knight's request. After the trial court sentenced Knight to death, and we affirmed on direct appeal, Knight petitioned the United States Supreme Court for certiorari review, which that Court denied on April 30, 2001. Knight v. Florida, 532 U.S. 1011 (2001).

On or about September 27, 2001, Knight filed an unverified shell motion for postconviction relief, which was stricken but later reinstated following a determination that the verification had been notarized on September 10, 2001. Throughout the postconviction proceedings, Knight was either pro se or represented by his current counsel, Capital Collateral Regional Counsel – Southern Region (CCRC-South), which resulted in numerous pro se amendments and supplements to Knight's postconviction motion—all of which were adopted by counsel. These filings present the following twenty-one claims for relief: (1) the State violated Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972); (2) Knight's guilt phase jury waiver was not knowing, intelligent, and voluntary; (3) Knight's waiver of guilt phase counsel was not knowing, intelligent, and voluntary; (4) Knight's penalty phase jury waiver was not knowing, intelligent, and voluntary; (5) Knight is "innocent of first-degree murder"; (6) penalty phase counsel was ineffective for failing to present available mitigation evidence; (7) Knight was denied an adequate mental health evaluation under Ake v. Oklahoma, 470 U.S. 68 (1985); (8) Knight is "innocent of the death

penalty"; (9) Knight's right to confront witnesses under Crawford v. Washington, 541 U.S. 36 (2004), was violated; (10) Florida's capital sentencing procedures are unconstitutional under Ring v. Arizona, 536 U.S. 584 (2002); (11) Knight was unconstitutionally denied access to public records under Chapter 119, Florida Statutes; (12) Knight's sentence is unconstitutional because it has been applied discriminately against those accused of killing Caucasians; (13) Florida's capital sentencing structure fails to prevent arbitrary and capricious imposition; (14) Florida's lethal injection procedures are unconstitutional; (15) Knight is "insane to be executed"; (16) cumulative error; (17) Knight's conviction violates double jeopardy and speedy trial based on entry of a nolle prosequi in Knight's 1994 case; (18) counsel was ineffective for failing to file a motion to discharge the instant case; (19) newly discovered evidence that Knight's sentence constitutes cruel and unusual punishment; (20) the State violated Richardson v. State, 246 So. 2d 771 (Fla. 1971); and (21) counsel was ineffective for failing to ensure that Knight had access to a complete record on appeal. The postconviction court granted an evidentiary hearing on all of Knight's claims, except claims 14, 19, and 20. The evidentiary hearing was held on May 1-3, June 21, and August 1-2, 2012. On February 6, 2013, the postconviction court denied all of Knight's claims.

During the postconviction proceedings, the parties also engaged in records litigation, during which it was discovered that the records from the Meehan and

Kunkel cases were comingled. Certain documents had been destroyed pursuant to the appropriate timetables for record retention. Efforts were also made to track down retired or deceased court reporters to obtain notes from which transcripts of certain proceedings could be recreated. However, some documents were never recovered. Knight now appeals the denial of his postconviction motion.

## ANALYSIS

Knight raises the following issues on appeal: (1) penalty phase counsel was ineffective for failing to adequately investigate and present mitigation evidence; (2) guilt and penalty phase counsel were ineffective for failing to move for a discharge of the instant case based on the 1994 case against Knight, in which the State entered a nolle prosequi; (3) guilt and penalty phase counsel were ineffective for failing to raise the issue of the State's Richardson violation before being discharged; (4) the reappointment of CCRC-South over Knight's objection deprived Knight of his right to self-representation; (5) Knight's waiver of guilt phase counsel and of both guilt and penalty phase juries was not knowing, intelligent, and voluntary; and (6) Florida's lethal injection procedures are unconstitutional.

Knight also petitions for a writ of habeas corpus based on ineffective assistance of appellate counsel for failing to raise the following three claims: (1) Knight's waiver of a guilt phase jury was not knowing, intelligent, and voluntary;

(2) Knight's waiver of a penalty phase jury was not knowing, intelligent, and voluntary; and (3) that the record on appeal was incomplete. First, we summarily reject Knight's claim that Florida's lethal injection procedures are unconstitutional, as we have previously rejected such claims in numerous cases.[5] Each of Knight's remaining claims will be addressed separately below.

## I. Ineffective Assistance of Trial Counsel

Knight raises three claims of ineffective assistance of trial counsel. To prevail, he must demonstrate both prongs of the Strickland[6] test—deficient performance and prejudice—as to each claim. Orme v. State, No. SC13-819, 2015 WL 8469221, at *4 (Fla. Dec. 10, 2015). Counsel has performed deficiently when his or her acts or omissions fall outside the range of reasonably competent attorney performance when viewed under prevailing professional standards. Id. As to prejudice, counsel's deficiency must have so affected the fairness and reliability of

---

5. Deparvine v. State, 146 So. 3d 1071, 1104-05 (Fla. 2014); Henry v. State, 134 So. 3d 938, 946-49 (Fla.), cert. denied, 134 S. Ct. 1536 (2014); Howell v. State, 133 So. 3d 511 (Fla.), cert. denied, 134 S. Ct. 1376 (2014); Muhammad v. State, 132 So. 3d 176, 189-97 (Fla. 2013), cert. denied, 134 S. Ct. 894 (2014); Kimbrough v. State, 125 So. 3d 752 (Fla.), cert. denied, 134 S. Ct. 632 (2013); Valle v. State, 70 So. 3d 530, 541 (Fla.), cert. denied, 564 U.S. 1067 (2011); Smith v. State, 998 So. 2d 516, 529 (Fla. 2008), cert. denied, 556 U.S. 1991 (2009); Lightbourne v. McCollum, 969 So. 2d 326, 353 (Fla. 2007), cert. denied, 553 U.S. 1059 (2008).

6. Strickland v. Washington, 466 U.S. 668, 687 (1984).

the proceedings that our confidence in the outcome of Knight's case is undermined. Id. In reviewing the denial of Knight's motion, we defer to the postconviction court's factual findings where supported by competent, substantial evidence, but review the court's legal conclusions de novo. See Clark v. State, 35 So. 3d 880, 886 (Fla. 2010) ("[A]s long as the trial court's findings are supported by competent substantial evidence, this Court will not 'substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.' " (quoting McLin v. State, 827 So. 2d 948, 954 n.4 (Fla. 2002))). Moreover, we are highly deferential to the postconviction court on issues of credibility. Archer v. State, 934 So. 2d 1187, 1196 (Fla. 2006); Bell v. State, 965 So. 2d 48, 63 (Fla. 2007) ("Questions of credibility are left to the determination of the circuit court, and provided there is competent, substantial evidence to support those credibility assessments, we will defer to that court's decision.").

## A. Failure as to Mitigation

Knight claims that penalty phase counsel was ineffective for failing to adequately investigate and present mitigation evidence. He also argues that had more mitigation evidence been presented, such as that which he offered at the evidentiary hearing, it would have provided third-party confirmation of his penalty phase expert's testimony.

Knight presented the following witnesses at the evidentiary hearing in support of this particular claim: Dr. Abby Strauss, a psychiatrist who testified at Knight's penalty phase and also reviewed new mitigation information from postconviction counsel in connection with the instant proceedings; Dr. Philip Harvey, a neuropsychologist hired by Knight as a postconviction expert; Dr. Jonathan Lipman, a neuropharmacologist hired by Knight for postconviction proceedings; Timothy Pearson, Knight's codefendant in the instant case; Zebedee Fennell, who was a staff member at the Eckerd Youth Academy, where Knight spent some time during his youth; and Theresa Fowler (formerly, Theresa Scott), Knight's sister who also testified at the penalty phase. The testimony from Knight's lay witnesses essentially described his substance abuse history and childhood experiences.

The postconviction court first found that Dr. Strauss was the only doctor to provide a clinical diagnosis at the evidentiary hearing, that Drs. Harvey and Lipman made no diagnosis of Knight, and that the additional information Dr. Strauss received merely solidified but did not change his penalty phase opinion. These findings are supported by competent, substantial evidence. First, there is record evidence that neither Dr. Harvey nor Dr. Lipman made a diagnosis of Knight. Further, because Dr. Lipman was not licensed to perform psychological tests in Florida and testified that all of his testing was completed purely for

- 11 -

research purposes, we defer to the court's finding that Dr. Lipman's testimony was not credible. See Bell, 965 So. 2d at 63; Archer, 934 So. 2d at 1196. Lastly, Dr. Strauss himself testified that his opinion did not change based on the information provided in postconviction. Although he acknowledged that the new mitigation information he received confirmed and increased the strength or credibility of his penalty phase testimony, such confirmation was not necessary, nor has Knight shown how such confirmation would have made a difference—especially given the trial court's findings as to the statutory mental health mitigators. Postconviction counsel's ability to find additional experts who, it argues, provide more favorable testimony does not make penalty phase counsel's performance deficient. See Dufour v. State, 905 So. 2d 42, 58 (Fla. 2005) ("Simply presenting the testimony of experts during the evidentiary hearing that are inconsistent with the mental health opinion of an expert retained by trial counsel does not rise to the level of prejudice necessary to warrant relief."). We find no deficient performance as to these mitigation witnesses.

As to Pearson, the postconviction court found that he did not testify at Knight's penalty phase "based on the advice of counsel as he was the co-defendant and his case was pending at the time." Accordingly, the court found no deficient performance because Knight's counsel could not be "faulted for failing to call a witness who would not testify." After reviewing the record, we find that Pearson's

testimony wavered significantly as to his ability to testify at Knight's penalty phase. However, he did state at times that he refused to testify, was unavailable to testify, and was advised by his attorney not to testify as he was facing his own charges in connection with Kunkel's murder. As such, the postconviction court's finding as to Pearson's unavailability is supported by competent, substantial evidence. We also agree with the court's finding of no deficiency for not calling this unavailable or unwilling witness.

The postconviction court gave "little to no weight" to Fennell's testimony—which the court found was solely related to the conditions at Eckerd Youth Academy at a time when Knight may or may not have been there—because although Fennell recalled a "Ronald Knight" at the facility, Fennell remembered Knight being African-American, not Caucasian, and Fennell was unable to recognize Knight as the "Ronald Knight" he recalled. This finding is supported by sufficient evidence. There was some confusion as to Fennell's position at the Eckerd Youth Academy during the time periods when Knight would have been there. Also, Fennell's memory of a "Ronald Knight" and non-identification of Knight at trial does not add much weight to Fennell's testimony. Due to its limited value, Fennell's testimony does not result in deficient performance by Knight's counsel.

Lastly, the postconviction court cited inconsistencies between Fowler's penalty phase and postconviction testimony and found that although Fowler explained the contradictions by stating that she had been able to "reflect on the past" and was now seeing things more clearly than when she originally testified, counsel cannot be deemed ineffective for failing to present mitigation that only became available after a family member had time to reflect on her original testimony. The postconviction court's assessment as to Fowler's credibility is supported by competent, substantial evidence, and we agree with its legal conclusion. Counsel cannot be deemed deficient because a witness was able to remember more on postconviction than during her original testimony at trial.

In determining this issue, we do not inquire whether mitigation could have been better presented, but whether the defendant has demonstrated both deficient performance and prejudice. Brown v. State, 846 So. 2d 1114, 1121 (Fla. 2003). As Knight has not demonstrated deficient performance as to any aspect of this ineffectiveness claim, he is not entitled to relief. A discussion of prejudice is unnecessary. Orme, 2015 WL 8469221, at *4 ("Because both prongs must be demonstrated, once a defendant has failed to meet one prong, a discussion of the other is unnecessary.").

- 14 -

## B. Failure to Move for Discharge

Knight argues that his penalty phase counsel, Jose Sosa, was ineffective for failing to move to discharge the instant case or for failing to notify guilt phase counsel Ann Perry of the need to do so, based on Sosa's knowledge of the 1994 case.[7] Knight argues that Perry was ineffective for failing to investigate the 1994 case—once she became aware of it—to determine if a motion for discharge was appropriate. However, Knight is not entitled to relief.

Knight argues two bases on which a motion for discharge could have been properly filed: (1) a double jeopardy violation and (2) a violation of speedy trial. As to double jeopardy, Knight argues that the jury in the 1994 case was sworn in the assembly room and that according to Florida Rule of Criminal Procedure 3.191(c), "[t]he trial is considered to have commenced when the trial jury panel for that specific trial is sworn for voir dire examination." Thus, Knight argues that double jeopardy attached because the 1994 trial began when the jury was sworn in the assembly room. However, Knight's argument conflates the concept of when trial commences for speedy trial versus for double jeopardy purposes.

Florida Rule of Criminal Procedure 3.191(c) describes when trial commences for speedy trial purposes and thus, cannot serve as the basis for a

---

7. Sosa represented Knight in the original 1994 case. Sosa died years before the evidentiary hearing in 2012 and therefore did not testify at the hearing.

- 15 -

double jeopardy violation. Double jeopardy attaches "when the jury is impaneled and sworn." Turner v. State, 37 So. 3d 212, 220 (Fla. 2010); see also State v. Gaines, 770 So. 2d 1221, 1225 (Fla. 2000). This principle does not refer to a venire panel being sworn in to prepare for voir dire, but to the jury of record, which has been selected to hear the case, being sworn in to prepare to hear testimony. See Serfass v. United States, 420 U.S. 377, 388 (1975) (stating this principle and explaining that the Supreme Court "has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " (quoting United States v. Jorn, 400 U.S. 470, 479 (1971)).

Here, the postconviction court considered a transcript of the January 3, 1995, hearing at which the nolle prosequi was entered; testimony from the court reporter who prepared it; testimony from former prosecutor Shirley DeLuna, who had entered the nolle prosequi; and Knight's testimony and found that the jury had not been sworn in Knight's 1994 case. The court found DeLuna's and the court reporter's testimony credible and that there was no unrecorded or un-transcribed portion of the transcript to indicate that a jury was sworn, a witness was called, or a motion for discharge was made. Because a jury was not sworn, the court found

that jeopardy did not attach and the State was permitted to file charges in the instant case.

After reviewing the record, we find that the postconviction court's factual findings are supported by competent, substantial evidence.  Clark, 35 So. 3d at 886.  Thus, there was no basis for Knight's counsel to file a motion to dismiss,[8] and counsel cannot be deemed ineffective for failing to file a baseless motion.  See, e.g., Lebron v. State, 135 So. 3d 1040, 1054 (Fla. 2014); Johnston v. State, 63 So. 3d 730, 740 (Fla. 2011).  We deny Knight's claim of ineffective assistance of counsel for failing to file a motion to dismiss on double jeopardy grounds.

There also can be no deficient performance as to speedy trial because the speedy trial rule was not violated in Knight's 1994 case.  Florida Rule of Criminal Procedure 3.191(j)(2) states that if trial "does not commence within the periods of time established by this rule," a court shall grant any pending motion for discharge unless "the failure to hold trial is attributable to the accused, a codefendant in the same trial, or their counsel."  In this case, the failure to commence trial can be attributed to Knight in two ways:  (1) defense counsel filing for or stipulating to at

---

8. Knight argues that counsel was ineffective for not filing a motion for discharge based on the alleged double jeopardy violation.  However, motions for discharge are discussed in Florida Rule of Criminal Procedure 3.191, which concerns only speedy trial violations and does not mention double jeopardy.  It appears the proper motion would be a motion to dismiss under rule 3.190(c)(2).

least one continuance in the 1994 case prior to the speedy trial time expiring and (2) witness intimidation by Knight causing the entry of the nolle prosequi.

First, the postconviction court found that on August 26, 1994, the parties stipulated to a continuance and that on October 28, 1994, the parties requested a continuance that was attributed to the Defendant.[9] These findings are supported by competent, substantial record evidence. The docket entry for August 26, 1994, reads in pertinent part, "Upon stipulation of counsel, and with leave of the court, case continued and reset." The transcript also confirms this finding as to that hearing. As to the October 28, 1994, continuance, the postconviction court relied on a transcript from that hearing in which the trial court stated the defense had requested a continuance to which the State had no objection and defense counsel agreed that the sixty-day continuance would be attributable to defense counsel and

_____

9. Knight argues that the postconviction court previously found, in a hearing on June 3, 2011, that speedy trial had not expired. However, this argument fails for several reasons. First, a finding that speedy trial has not expired is not a finding that it has been waived. Second, in its December 13, 2011, order the court made clear that it was not addressing at that hearing the speedy trial issue in relation to Knight's motion for discharge claims and would instead address the issue as part of the evidentiary hearing on Knight's postconviction motion. Even if the court's statement during the hearing could be considered a ruling on the merits, at the point when the court made the finding, the court had not yet been presented with the October 28, 1994, transcript—due to the lost and commingled files—and therefore had no knowledge of the continuance. Lastly, in his July 14, 2011, Motion for Clarification, Knight himself states that no motion for discharge with respect to the double jeopardy/speedy trial issue was argued at the June 3, 2011, hearing.

his client.  Although—as Knight points out—the docket entry for that hearing reads in part, "State moves for a continuance.  Motion granted without objection by the defense," the postconviction court obviously resolved this inconsistency in favor of relying on the transcript.[10]  The transcript is further supported by testimony from Shirley DeLuna, prosecutor in the 1994 case, and Andrew Slater, prosecutor in the Meehan case who initiated the process of re-filing charges against Knight for the Kunkel murder.  As such, the postconviction court's finding of defense continuances being on August 26, 1994, and October 28, 1994, are supported by competent, substantial evidence.  Clark, 35 So. 3d at 886.

"[W]hen a defendant requests a continuance prior to the expiration of the applicable speedy trial time period for the crime with which he is charged, the defendant waives his speedy trial right as to all charges which emanate from the same criminal episode."  Stewart v. State, 491 So. 2d 271, 272 (Fla. 1986); see also State v. Kelley, 322 So. 2d 581, 583 (Fla. 1st DCA 1975) ("A waiver of a defendant's right to a speedy trial results where his attorney and the State's attorney agree upon or stipulate to a continuance of the trial, or when his attorney consents to or acquiesces in a delay sought by the State.").  Such is the case even

_____

10. In addition, this inconsistency is of no effect here since the parties also agreed to a continuance on August 26, 1994, which we find supports the finding of waiver on its own.

- 19 -

where the defendant's attorney seeks the continuance over the defendant's objection or without his consent. McKenzie v. State, 29 So. 3d 272, 282 (Fla. 2010).

The speedy trial rule provided 175 days to bring Knight to trial on a felony charge. Fla. R. Crim. P. 3.191(a). Because the arrest record in the 1994 case was filed on May 12, both the August 26 and October 28 continuances occurred before speedy trial had expired. Because either a requested or stipulated continuance waives a defendant's speedy trial rights, any motion for discharge—whether filed by Knight's counsel or by Knight himself, since he was pro se for some of the guilt phase of his trial—would have been denied, and counsel cannot be deemed ineffective for failing to file a baseless motion for discharge. See, e.g., Lebron, 135 So. 3d at 1054; Johnston, 63 So. 3d at 740.

As to the second reason for the failure to commence trial being attributable to Knight, the postconviction court found that the entry of the nolle prosequi in 1994 was caused by the unavailability of witnesses in the case due to witness intimidation by Knight. The court's finding is supported by competent, substantial record evidence, where DeLuna, Slater, and Knight's accomplice, Brennalt, all testified to the effects of Knight's witness intimidation. Because of Knight's

improper involvement, there was no basis to discharge the case,[11] and counsel cannot be deemed ineffective for failing to file a baseless motion for discharge. See, e.g., Lebron, 135 So. 3d at 1054; Johnston, 63 So. 3d at 740. Accordingly, we find that Knight is not entitled to relief on his claim of ineffective assistance for failing to file a motion to discharge.

## C. Failure to Address the State's Richardson Violation

As his final ineffectiveness claim, Knight argues that the State violated the discovery requirements of Richardson[12] and Florida Rule of Criminal Procedure 3.220(b)(1)(B) and (J) by failing to provide him with the records and transcripts from his 1994 case, certain statements and depositions of his accomplice, Brennalt, and the report of the Medical Examiner's investigator, Wayne J. Arbaczawski. Knight argues that trial counsel were ineffective for failing to raise this issue at the time of their respective discharges. Knight also asserts that he raised the issue several times during his pro se representation and, as such, the trial court erred in not conducting a Richardson hearing.

"Whereas the main question on direct appeal is whether the trial court erred, the main question in a Strickland claim is whether trial counsel was ineffective."

_____

11. Fla. R. Crim. P. 3.191(j)(2) (stating that court shall grant motion for discharge unless "the failure to hold trial is attributable to the accused").

12. Richardson v. State, 246 So. 2d 771 (Fla. 1971).

- 21 -

Bruno v. State, 807 So. 2d 55, 63 (Fla. 2001) (footnote omitted). Here, Knight

asserts trial court error and ineffective assistance of trial counsel. As the

postconviction court found, Knight's claim of trial court error should have been

raised on direct appeal and is therefore procedurally barred. State v. Coney, 845

So. 2d 120, 137 (Fla. 2003) ("To the extent Coney's claims on this point are claims

of trial court error, such claims generally are not cognizable in a rule 3.850

motion."); Bruno, 807 So. 2d at 63 ("A claim of trial court error generally can be

raised on direct appeal but not in a rule 3.850 motion, and a claim of

ineffectiveness generally can be raised in a rule 3.850 motion but not on direct

appeal.") (footnote omitted).

As to Knight's ineffectiveness claim, even if we were to assume deficient

performance, Knight has not shown that he was prejudiced by his trial counsel

failing to raise this issue. Knight argues that if he had received the Brennalt

documents and the investigator's report from the State prior to trial, he could have

used them to impeach Brennalt's testimony and the State's theory of the crime: that

Knight was the shooter and instigator of the killing. As to the Brennalt documents,

Knight points to various inconsistencies in Brennalt's trial testimony, statements,

and depositions and describes the materiality of the documents as follows: "[A]t

the evidentiary hearing below Dain Brennalt testified that he had consistently told

the same story, 'the absolute truth' in all his statements. However the reality is that

his testimony at trial contradicted his numerous pre-trial statements, interviews, and depositions." This comment fails to recognize, however, that at trial, Knight was able to use several of Brennalt's statements and depositions to impeach Brennalt as to his truthfulness. Knight has not demonstrated that any of the documents in question would have had any additional impeachment value.

Knight represents that in the investigator's report, Arbaczawski opines that the shooting did not occur at the location where the body was found. For this premise, he cites the following statement from the report: "My initial impression of this scene was that the deceased was dumped from a vehicle, bleeding on the roadway, and rolled down the canal embankment." Knight argues that had he been provided the report, he would have used this information as further support for his theory of the case. However, Knight's theory of the case was that someone else committed the crime. Using the report to substantiate a theory in which the murder occurs at a different location still does not eliminate Knight as the shooter— regardless of the location of the actual murder. Therefore, Knight was not prejudiced by counsel's failure to raise the Richardson issue, especially where he represented himself after his counsel were discharged.

As an aside, Knight also argues that he was denied due process when he was repeatedly denied access to public records under Chapter 119 and Florida Rule of Criminal Procedure 3.852. However, Knight makes no arguments for deficiency

- 23 -

or prejudice as to this issue. Such speculative, conclusory allegations are insufficient to warrant postconviction relief. Johnston v. State, 70 So. 3d 472, 477 (Fla. 2011) ("Mere speculation that counsel's error affected the outcome of the proceeding is insufficient."); see, e.g., Rhodes v. State, 986 So. 2d 501, 513-14 (Fla. 2008) (upholding summary denial of ineffective assistance of counsel claim absent factual allegations of both a deficiency in performance and prejudice); Carroll v. State, 815 So. 2d 601, 609 n.8 (Fla. 2002) (finding defendant's public records claim insufficiently pled where claim was raised as a conclusory assertion within another, separate issue). We find that Knight is not entitled to relief as to these claims.

## II. Reappointment of CCRC-South

Knight argues that the reappointment over his objection of CCRC-South during postconviction proceedings deprived him of his right to self-representation. "While a defendant has a constitutional right to self-representation and self-determination at trial, these rights do not continue to the same degree after the conviction." Lambrix v. State, 124 So. 3d 890, 899 (Fla. 2013). As this Court has explained:

> [A] defendant's federal constitutional right to self-representation ends when he or she has been convicted. Likewise, after the conviction is affirmed on direct appeal, a defendant's right to self-determination must be balanced with this Court's obligations to ensure reliability, fairness, and uniformity in the imposition of the death penalty. See generally Muhammad v. State, 782 So. 2d 343, 364 (Fla. 2001).

- 24 -

We emphasize that a defendant continues to have a right to self-determination during postconviction proceedings, and this Court will not force counsel on a defendant who does not seek to challenge his or her convictions after the convictions have been affirmed, so long as the defendant is competent to make that decision and the waiver is knowing and voluntary. James v. State, 974 So. 2d 365, 367 (Fla. 2008); Durocher v. Singletary, 623 So. 2d 482, 484-85 (Fla. 1993). Any right of self-determination and self-representation during postconviction proceedings, however, does not outweigh this Court's solemn duty to ensure that the death penalty is imposed in a fair, consistent, and reliable manner, and to guarantee this Court's administrative responsibility to minimize delays in the postconviction process. See Gordon v. State, 75 So. 3d 200, 203 (Fla. 2011) (holding that based on these policy considerations, death-sentenced appellants may not appear pro se when appealing the denial of relief in postconviction proceedings). In addition, a defendant does not have the right to disrupt the judicial system, frustrate the administration of justice, or prevent his or her case from being litigated. See, e.g., McCray v. State, 71 So. 3d 848, 868 (Fla. 2011) ("[T]he trial court has the power to terminate a defendant's self-representation if he continues to abuse the court system."), cert. denied, 132 S. Ct. 1743 (2012).

Id. at 899-900. This Court reviews a lower court's handling of a request for self-representation for an abuse of discretion. Aguirre-Jarquin v. State, 9 So. 3d 593, 602 (Fla. 2009).

Knight's situation is like that of the defendant in Lambrix. There, the defendant argued that the postconviction court erred in denying his request to represent himself. 124 So. 3d at 898. The defendant had filed a pro se motion in 2009 to discharge his counsel. Id. At a hearing on the motion, the defendant "asserted that he was seeking the appointment of alternative counsel and had 'no intention of waiving the statutory right to postconviction counsel before the

- 25 -

proceedings in the lower court.' " Id. The postconviction court denied the motion, "finding that CCRC was rendering competent representation and that there was no basis to discharge counsel." Id. Later that year, the defendant filed another pro se motion, "seeking the right to waive postconviction counsel and represent himself." Id. at 899. When asked during the hearing "whether he understood that if he waived postconviction counsel, it was not guaranteed that postconviction counsel would be reappointed later, Lambrix asserted that he understood," but added that he would likely be reasserting his right to postconviction representation upon the signing of his death warrant in the future. Id.

In reviewing the defendant's claim on appeal from the denial of his postconviction motion, we concluded that the postconviction court did not abuse its discretion in denying Lambrix's right to represent himself. Id. We explained our rationale as follows:

> Permitting Lambrix to waive counsel now, especially when he specifically stated that he would like the opportunity for counsel if a death warrant is signed in the future, would only create delays at the point when a death warrant is signed, as counsel would then need to be appointed and to have an opportunity to become familiar with the case. Further, the only purpose in allowing Lambrix to proceed pro se at this time would be to give him further ability to continue to file pleadings that to date have consistently lacked merit. At least with counsel to represent him, there will be the requirement that counsel has a good faith belief that the allegations are not completely devoid of merit. Thus, any right to self-representation Lambrix may have does not outweigh the risk of substantial interference with the administration of the death penalty presented in this case.

Id. at 900 (citation omitted). As such, we affirmed the postconviction court's denial of the defendant's motion to proceed pro se. Id.

Knight's case presents an even stronger argument than that of Lambrix for denying relief as to this issue. First, the postconviction court here allowed Knight to proceed pro se several times throughout the postconviction proceedings; whereas, the defendant in Lambrix was not permitted to represent himself at any point during postconviction. Id. at 898-99. Also, the court gave Knight a choice: to continue with CCRC-South or to represent himself; conversely, it does not appear that the postconviction court in Lambrix provided an alternative and instead simply denied the defendant's motion to discharge counsel. Id. at 898, 899. Even providing Knight with such a choice did not violate his right to self-representation. Weaver v. State, 894 So. 2d 178, 188 (Fla. 2004) (finding that where a "trial court decides that court-appointed counsel is providing adequate representation, the court does not violate an indigent defendant's Sixth Amendment rights if it requires him to keep the original court-appointed lawyer or represent himself.").

Lastly, "[b]efore the trial court can make a decision whether to permit the defendant to proceed pro se, the defendant's request for self-representation must be unequivocal." Tennis v. State, 997 So. 2d 375, 378 (Fla. 2008); Aguirre-Jarquin, 9 So. 3d at 602 ("It is well settled that the accused has the right to self-representation. However, it is also settled that the defendant must unequivocally

elect to represent himself.") (citation omitted). At the time of CCRC-South's reappointment, it appears Knight was instead asserting a desire to discharge CCRC-South and have new counsel appointed—not to represent himself. In fact, Knight specifically stated that he did not want to represent himself.

Thus, it appears Knight's claim is that the postconviction court erred in reappointing CCRC-South instead of appointing substitute counsel. As noted by the State, however, Knight was not entitled to counsel of his choice. See Capehart v. State, 583 So. 2d 1009, 1014 (Fla. 1991) ("Without establishing adequate grounds, a criminal defendant does not have a constitutional right to obtain different court-appointed counsel."). Upon inquiring into the quality of representation Knight was receiving and finding no grounds to discharge CCRC-South, the postconviction court properly presented Knight with the options available to him: to keep CCRC-South or proceed pro se. See, e.g., Koon v. State, 513 So. 2d 1253, 1255 (Fla. 1987) (finding "no basis for Koon's argument that he should have been furnished new counsel" because an indigent defendant "does not have a right to have a particular lawyer represent him" and although a defendant has a constitutional right to waive counsel, "Koon expressly declared that he had no desire to represent himself"). We find the postconviction court's reappointment of CCRC-South was not an abuse of discretion.

### III.  Waiver of Counsel and Guilt and Penalty Phase Juries

Knight argues that his waivers of guilt phase counsel and both guilt and penalty phase juries were not knowing, intelligent, and voluntary.  However, as the postconviction court noted in its order, this Court addressed Knight's waiver of guilt phase counsel on direct appeal, finding that the trial court did not err in allowing Knight to waive counsel and represent himself.  Knight, 770 So. 2d at 668.  Accordingly, Knight's claim as to his waiver of guilt phase counsel is procedurally barred, and we affirm the postconviction court's denial of this claim.  See Muhammad v. State, 603 So. 2d 488, 489 (Fla. 1992) (finding claims procedurally barred because already raised and rejected on direct appeal).  Knight's claim regarding his waivers of guilt and penalty phase juries is also procedurally barred, as it should have been raised on direct appeal.  Id. at 489 (finding claims procedurally barred because "the issue could have or should have been raised on direct appeal.").  Thus, Knight is not entitled to relief on this claim.

### IV.  Habeas Claims

As with postconviction claims, we also use the Strickland standard to determine ineffective assistance of appellate counsel.  Walls v. State, 926 So. 2d 1156, 1175 (Fla. 2006).  Appellate counsel's deficiency must be related to an error affecting the outcome of the case, not harmless error, and must have so affected the appellate process that confidence in the correctness of the result is undermined.

Orme, 2015 WL 8469221, at *4.  Furthermore, appellate counsel cannot be deemed ineffective for failing to raise a meritless issue.  Wyatt v. State, 71 So. 3d 86, 112-13 (Fla. 2011).

### A.  Waivers of Guilt and Penalty Phase Juries

Knight argues that appellate counsel was ineffective for failing to raise the claim that Knight's waivers of guilt and penalty phase juries were not knowing, intelligent, and voluntary.  A waiver of the right to a jury trial must be knowing, intelligent, and voluntary.  See State v. Upton, 658 So. 2d 86, 87 (Fla. 1995); Lamadline v. State, 303 So. 2d 17, 20 (Fla. 1974) (holding that "record must affirmatively show that the defendant voluntarily and intelligently waived the right to have a sentencing jury").

In this case, Knight first mentioned the possibility of wanting a nonjury trial on January 8, 1998, but the issue was not discussed at that time.  In a letter to the trial court dated February 10, 1998, Knight again expressed his desire to have a nonjury trial and requested a hearing on the issue.  At a February 18, 1998, pre-trial hearing, the trial judge mentioned the letter, explained that waiver is a serious issue, and gave Knight some time to discuss the jury waiver option with standby counsel, Jose Sosa.  Sosa explained that he had discussed the issue with Knight before the hearing and Knight had already decided on the waiver.  After discussing the issue with Sosa again, Knight told the court he had had enough time to talk

with Sosa and confirmed his desire for a nonjury trial. Two days later, the court reconfirmed with Knight his desire for a nonjury trial and asked Sosa to memorialize Knight's wishes in writing. Knight executed a written waiver of his right to a trial by jury. After the guilt phase, the judge read the verdict and again inquired of Knight regarding his desire to waive his right to a jury, clarifying that Knight wanted to waive his rights as to both the guilt and penalty phases of trial.

This Court has found jury trial waivers to be knowing, intelligent, and voluntary in cases similar to the instant case. See, e.g., Guzman v. State, 721 So. 2d 1155, 1158 & n.1 (Fla. 1998) (finding defendant's waiver of guilt and penalty phase juries to be knowing, voluntary, and intelligent where waiver was defendant's idea, contrary to defense counsel's advice, both trial court and defense counsel questioned defendant in open court, and defendant signed a written waiver); Mines v. State, 390 So. 2d 332, 335-36 (Fla. 1980) (denying relief as to guilt and penalty phase jury waivers where defendant initiated request for nonjury trial, trial judge immediately directed defendant to confer with his counsel privately concerning waiver, trial court subsequently made "a full inquiry of the appellant in open court," a written waiver was executed by defendant, and court inquired of defendant again concerning penalty phase waiver prior to sentencing despite written waiver including penalty phase). Although the defendants in Mines and Guzman were represented by counsel throughout their trials, Knight was able

to receive advice at the guilt phase because Sosa was Knight's standby counsel, and Knight was represented by Sosa at the penalty phase.

Further, Knight's testimony at the evidentiary hearing indicates that Knight was using his past criminal trial experience to make intelligent decisions about whether to waive his right to a jury trial. In addition, the postconviction court found most of Knight's testimony on this issue not credible, and such finding is supported by competent, substantial evidence. Clark, 35 So. 3d at 886; McLin, 827 So. 2d at 954 n.4. In light of Mines and Guzman, Knight's prior experience with a criminal trial, and his adamancy for waiving his right to a trial by jury, we find that Knight's waivers of guilt and penalty phase juries were knowing, voluntary, and intelligent.

Had appellate counsel, on direct appeal, sought this Court's review of Knight's waivers of guilt and penalty phase juries, this Court would have found them to be knowing, intelligent, and voluntary. Because this issue would have been found meritless, counsel cannot be deemed ineffective for failing to raise it. Wyatt, 71 So. 3d at 112-13; see also Rutherford v. Moore, 774 So. 2d 637, 643 (Fla. 2000) ("If a legal issue 'would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." (quoting Williamson v. Dugger, 651 So. 2d 84, 86 (Fla. 1994))). We

find that Knight has not demonstrated ineffective assistance of appellate counsel as to this issue.

## B. Incomplete Record on Appeal

Knight argues that appellate counsel was ineffective for failing to ensure a complete record on appeal, which Knight avers should have included the records from his 1994 case and certain statements and depositions of his accomplice Brennalt—which Knight states he could have used for impeachment purposes. Knight also states in one sentence in his petition that transcripts of all hearings related to the waiver of counsel and the waiver of the jury at both phases of trial should have been included as well. We first summarily reject Knight's claim as to the transcripts as insufficiently pled. He has not set forth which transcripts were not included, nor how their inclusion would have assisted him. See Rodriguez v. State, 919 So. 2d 1252, 1287 (Fla. 2005) ("Rodriguez has not sufficiently pled this claim as he has not explained what issues he was unable to raise as a result of any missing or inaccurate record. Thus, Rodriguez is not entitled to relief on this claim."). Our conclusion is further supported by our ability on direct appeal to have conducted a meaningful review of the waiver of counsel issue and by our ability to review the jury waiver issue in this habeas proceeding.

Knight's claim also fails concerning the records from his 1994 case. Knight's only argument as to the inclusion of the 1994 case records was as

- 33 -

follows: "[S]pecific prejudice exists because it is apparent that neither the parties on direct appeal nor this Court could rely on the accuracy of a record where a complete set of transcripts from the 1994 nolle prosse and transcripts of the later waivers after indictment for [first-degree] murder were simply not present in the record on appeal." Such a conclusory allegation of prejudice does not warrant habeas relief. Bradley v. State, 33 So. 3d 664, 685 (Fla. 2010); see, e.g., Freeman v. State, 761 So. 2d 1055, 1073 (Fla. 2000) ("Even if the Court were to assume that failure to include this portion of the record fell measurably below the standard of competent counsel, Freeman has not demonstrated that the failure prejudiced him. Accordingly, this claim is without merit.").

Lastly, Knight argues that he needed Brennalt's statements and depositions "for impeachment purposes." However, his habeas pleadings do not set forth any more specific arguments of prejudice than that and therefore do not entitle him to habeas relief. Bradley, 33 So. 3d at 685. As explained above, if Knight's purpose for these documents was impeachment as to truthfulness, such purpose was not thwarted given that Knight was able to impeach Brennalt using the statements and depositions he had. Accordingly, Knight has failed to demonstrate prejudice as to the Brennalt documents and neither deficiency nor prejudice as to the 1994 case documents or hearing transcripts in his current case. We therefore deny Knight's claim of ineffective assistance of appellate counsel as to this claim.

# CONCLUSION

For the above reasons, we affirm the postconviction court's denial of relief and deny habeas relief.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur. CANADY and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Two Cases:

An Appeal from the Circuit Court in and for Palm Beach County,
     Jeffrey J. Colbath, Chief Judge - Case No. 501997CF005175AXXXMB
And an Original Proceeding – Habeas Corpus

Neal Andre Dupree, Capital Collateral Regional Counsel – Southern Region, William McKinley Hennis, III, Litigation Director, Capital Collateral Regional Counsel – Southern Region, and Nicole M. Noel, Assistant Capital Collateral Regional Counsel – Southern Region, Fort Lauderdale, Florida,

     for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, Florida,

     for Appellee/Respondent