# Supreme Court of Florida

_____

No. SC2024-1264
_____

**JESSE BELL,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2024-1556
_____

**JESSE BELL,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

August 28, 2025

COURIEL, J.

Jesse Bell, a prisoner under sentence of death, appeals the circuit court's order summarily denying his motion for postconviction relief under Florida Rule of Criminal Procedure

3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. *See* art. V, §§ 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the circuit court's order denying Bell's rule 3.851 motion and deny Bell's habeas petition.

**I**

While serving a forty-year sentence at Mayo Correctional Institution (Mayo), Bell and his cellmate, Barry A. Noetzel,[1] devised a plan to murder Correctional Officer James Newman and one of their fellow inmates, Donald H. Eastwood Jr. *Bell v. State*, 336 So. 3d 211, 212-13 (Fla. 2022). As we have recounted elsewhere, Bell and Noetzel sharpened pieces of metal into weapons, adopted a vegan diet to gain closer proximity to the area of the kitchen where Officer Newman worked, and chose to kill Eastwood as a rehearsal for their planned murder of Officer Newman. *Id.* at 213; *Noetzel v. State*, 328 So. 3d 933, 936 (Fla. 2021).

On the day they had chosen, June 26, 2019, Bell and Noetzel succeeded in killing Eastwood. They lured him into their cell,

---

1. *See Noetzel v. State*, 328 So. 3d 933 (Fla. 2021) (affirming codefendant Noetzel's first-degree murder conviction and sentence of death).

stabbed his eyes, strangled him until his face turned purple, and hid his body between the bunks in their cell. *Bell*, 336 So. 3d at 213. Correctional officers foiled their attack on Officer Newman later that day, but only after Bell and Noetzel grievously injured him. *Id.*; *Noetzel*, 328 So. 3d at 937.

Bell confessed to the crimes and was transferred from Mayo to Florida State Prison (FSP). On October 29, 2019, a grand jury returned an indictment charging him and Noetzel with first-degree murder, attempted murder of a correctional officer with a deadly weapon, conspiracy to commit first-degree murder, and two counts of possession of contraband in a prison. *Bell*, 336 So. 3d at 213.

The trial court appointed counsel at Bell's first appearance, which occurred on December 5, 2019. Six days later, the State provided discovery exhibits, including an audio-recorded interview between Bell and an investigator for the Lafayette County State Attorney's Office.

During the recorded interview, the investigator and Bell reviewed video footage, among other evidence, and discussed Eastwood's murder and the attack on Officer Newman. Bell said that, while he was being apprehended, Mayo correctional officers

told Bell that they were "going to beat the s**t out of [Bell and Noetzel]" and "probably kill [them]." Chuckling, Bell told the investigator that he expected as much. When the investigator asked whether in fact that ever happened, Bell said it hadn't, but said, "[w]hen we got [to FSP], I mean, that's between me and you cause I, I earned that a** whoopin' you know and so I'm not mad about that . . . ." This exchange comprised less than one minute of the forty-five-minute interview; Bell spoke about the abuse for six seconds.

On December 13, 2019—eight days after the court appointed Bell's counsel and two days after the State provided discovery exhibits—Bell waived his right to counsel, entered a no-contest plea to all charges in the indictment, and waived his right to a penalty-phase jury trial. *Id.* at 214. During all required colloquies, Bell consistently and unequivocally affirmed that he understood the rights at issue and was acting of his own volition.

At Bell and Noetzel's joint penalty-phase proceeding, after the court renewed the required colloquies, Bell again unequivocally chose to represent himself. The court appointed standby counsel, and the State called several witnesses to prove five aggravating

- 4 -

factors. *Id.* After the State rested, Bell took the stand and offered brief mitigation testimony highlighting his history of depression, good courtroom and prison behavior, family support, honesty, and decision to take responsibility by voluntarily entering a no-contest plea. *Id.* at 215. He admitted his competency report into evidence but did not call any other witnesses or present additional mitigation evidence. *Id.* In closing, Bell argued against three of the aggravating factors the State had advanced. *Id.*

Upon the State's suggestion, the court ordered a presentence investigation (PSI) out of an abundance of caution. *Id.* Bell objected, expressing concerns about prolonging his sentencing and arguing that a PSI was unnecessary under *Muhammad*[2] since he did not waive mitigation. *Bell*, 336 So. 3d at 215. The court overruled Bell's objection and reassured him that the PSI would not cause a delay. Nevertheless, Bell refused to sign a release of information for a more thorough PSI.[3] The circuit court ultimately

---

2. *Muhammad v. State*, 782 So. 2d 343, 363 (Fla. 2001) (requiring certain mitigation-investigation procedures to be followed when a defendant waives mitigation).

3. As we previously stated, "[t]hough the PSI was not particularly thorough, it included the type of information a

sentenced Bell to death for the murder of Eastwood. *Id.*[4]

On direct appeal, Bell raised two issues. He argued that the circuit court abused its discretion, specifically by failing to order a comprehensive PSI, not requiring the State to present all mitigating evidence in its possession, and neglecting to appoint counsel to further investigate his potentially mitigating circumstances. He also argued that the circuit court committed fundamental error by not determining beyond a reasonable doubt whether the

comprehensive PSI requires." *Bell,* 336 So. 3d at 215 n.7 (citing Fla. R. Crim. P. 3.710(b)).

4. The circuit court found four aggravating factors: (1) Bell was previously convicted of a felony involving the use or threat of violence to a person (great weight); (2) the capital felony was committed by a person previously convicted of a felony and under sentence of imprisonment (great weight); (3) the capital felony was especially heinous, atrocious, or cruel (very great weight); and (4) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (very great weight). The court found no statutory mitigators and five nonstatutory mitigators: (1) Bell took responsibility for his conduct and cooperated during the investigation and prosecution (little weight); (2) Bell exhibited appropriate courtroom behavior (little weight); (3) Bell had been previously diagnosed with and treated for depression (little weight); (4) Bell had never assaulted any correctional officers until the attack on Officer Newman (no weight); and (5) Bell's family loves him (slight weight). *Bell,* 336 So. 3d at 215.

aggravating factors justified a death sentence and outweighed the mitigating circumstances.

This Court affirmed Bell's first-degree murder conviction and sentence of death and found that Bell's no-contest plea was voluntarily and knowingly entered. *Id.* at 218. Finding that *Muhammad* was not applicable (since Bell did not waive mitigation), we rejected Bell's claim that he was deprived of an individualized sentencing when the trial court declined to employ additional mitigation-investigation procedures. *See, e.g.*, *Muhammad*, 782 So. 2d at 363; *Marquardt v. State*, 156 So. 3d 464, 490 (Fla. 2015) (modifying *Muhammad*'s procedures to give trial courts discretion to appoint independent, special counsel to present mitigation when the PSI and the State's mitigation evidence point to the probability of significant mitigation).

Bell timely filed his initial rule 3.851 motion for postconviction relief. Following a *Huff*[5] hearing, the circuit court summarily denied

---

5. *Huff v. State*, 622 So. 2d 982, 983 (Fla. 1993) (requiring the opportunity to appear before the court on initial postconviction motions "for the purpose of determining whether an evidentiary hearing is required and to hear legal argument relating to the motion").

Bell's motion, finding that each of his claims was procedurally barred and otherwise conclusively refuted by the record. Appealing that order, Bell now argues that the circuit court erred in summarily denying three claims which allege: his waivers of counsel and a penalty-phase jury were involuntary due to prison abuse; counsel was ineffective for failing to discover and present evidence of the prison abuse to challenge the voluntariness of his waivers; and he was deprived of an individualized sentencing determination due to the involuntary waivers.

**II**

The circuit court did not err in denying Bell's postconviction motion without first holding an evidentiary hearing. Each of Bell's postconviction claims is predicated on his waivers of counsel and a penalty-phase jury, which he entered voluntarily and knowingly and did not challenge on direct appeal. The claims are therefore barred.

"[This Court] review[s] a circuit court's summary rejection of a postconviction claim de novo, 'accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the

- 8 -

movant is entitled to no relief.' " *Harvey v. State*, 318 So. 3d 1238, 1239 n.2 (Fla. 2021) (quoting *Dailey v. State*, 279 So. 3d 1208, 1215 (Fla. 2019)).  We have said that "[a] circuit court should hold an evidentiary hearing on a rule 3.851 motion 'whenever the movant makes a facially sufficient claim that requires a factual determination.' " *Rogers v. State*, 327 So. 3d 784, 787 (Fla. 2021) (quoting *Pardo v. State*, 108 So. 3d 558, 560 (Fla. 2012)).  Further, claims that could have been raised on direct appeal "are not cognizable through collateral attack."  *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983); *see also* Fla. R. Crim. P. 3.851(e)(1) (prohibiting claims that could or should have been raised on direct appeal).

## A

Bell says his waivers of counsel and a penalty-phase jury were involuntary because he had been abused while incarcerated.  A claim like this is barred if it is not first raised on direct appeal.  *See Knight v. State*, 211 So. 3d 1, 17 (Fla. 2016) (claims that waivers of guilt- and penalty-phase juries were not knowing, intelligent, and voluntary were procedurally barred in postconviction because they should have been raised on direct appeal (citing *Muhammad v.*

*State*, 603 So. 2d 488, 489 (Fla. 1992))). The circuit court was therefore correct to deny these claims.

Bell's claims are, in any event, conclusively refuted by the record. Waivers of counsel and a penalty-phase jury "must be knowing, intelligent, and voluntary." *Boatman v. State*, 402 So. 3d 900, 922 (Fla. 2024) (quoting *Knight*, 211 So. 3d at 17). "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances." *Figueroa-Sanabria v. State*, 366 So. 3d 1035, 1054 (Fla. 2023) (alteration in original) (citing *United States v. Ruiz*, 536 U.S. 622, 629 (2002)).

Here, the record shows that Bell's waivers were knowing, intelligent, and voluntary. Bell testified during his waiver colloquies that he had not been threatened or forced to enter his waivers, and that he was doing so of his own accord. *See Hutchinson v. State*, 243 So. 3d 880, 883 (Fla. 2018) ("[Defendant]'s colloquy supported the conclusion that his waiver was knowing, intelligent, and voluntary."). Bell never hesitated. He repeatedly expressed his desire for a speedy resolution and explained his decision to waive a

penalty-phase jury: he felt that the circuit judge was in a better position to consider his mitigation than twelve strangers. Bell also testified during his mitigation presentation as to the reasons he entered his waivers, referencing his acceptance of responsibility and desire not to cost "the taxpayers extra money." Even after the circuit court accepted his waivers, Bell repeatedly declined the court's renewed offers of counsel.

The circuit court did not err in summarily denying his claims.

**B**

Bell next raises an ineffective assistance of counsel claim for counsel's failure to investigate and discover the fact that he had been abused while incarcerated, and to present such evidence to refute the voluntariness of Bell's counsel and penalty-phase jury waivers. He does not challenge his guilty plea. The circuit court also correctly denied this claim.

"This Court has consistently held that to be entitled to an evidentiary hearing on a motion claiming ineffective assistance of counsel, the defendant must allege *specific facts* establishing both deficient performance of counsel and prejudice to the defendant." *Jones v. State*, 998 So. 2d 573, 587 (Fla. 2008) (collecting cases).

For the first prong, "the defendant must establish 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *Covington v. State*, 348 So. 3d 456, 466 (Fla. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  This means that counsel's representation must have fallen " 'below an objective standard of reasonableness' under 'prevailing professional norms.' " *Morris v. State*, 931 So. 2d 821, 828 (Fla. 2006) (quoting *Strickland*, 466 U.S. at 688).  And when assessing reasonableness, we take careful care "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *King v. State*, 260 So. 3d 985, 994 (Fla. 2018) (quoting *Strickland*, 466 U.S. at 689).

The second prong requires the showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Morris*, 931 So. 2d at 828 (quoting *Strickland*, 466 U.S. at 694).  In the penalty-phase context, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded

that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.

The most Bell can muster as to counsel's deficient performance is to assert that counsel failed to adequately discover, investigate, and act upon a six-second statement in a forty-five-minute recorded interview. According to Bell, his counsel should have: (1) reviewed the interview footage and determined that the described mistreatment could have rendered Bell's waivers involuntary; (2) investigated the abuse by interviewing corroborating inmate-witnesses and obtaining their statements; and (3) presented that evidence to the trial court to prevent it from accepting Bell's waivers.

This theory rests on a speculative and attenuated chain of reasoning that fails to establish deficient performance or prejudice. Bell's statements during the interview contain no indication that prison abuse was influencing his decision-making, nor does he signal distress. To the contrary, Bell laughed with the interviewer while discussing his mistreatment and described it as something he "expected" and "earned" from having attacked a correctional officer. Nothing in the recording suggests that he was intimidated or

coerced, or that he planned to enter waivers due to the isolated incident discussed during the interview or any other alleged mistreatment while incarcerated.

The corroborating affidavits also fail to support his theory. During postconviction proceedings, Bell submitted affidavits from two corroborating inmate-witnesses, Mitchell Womack and Leo L. Boatman, neither of whom were contacted prior to postconviction counsel's representation. Each affidavit discusses generally the type of mistreatment that inmates receive at FSP when they have a violent charge against a correctional officer. As applicable to Bell, Womack states that he spoke directly with Bell, who told him about threats from FSP staff about "mess[ing] [Bell] up" and that Bell was denied meals when staff served him "ghost trays." Womack's affidavit, however, makes no reference to any of these threats or actions as having influenced Bell's waivers.

As to Boatman's affidavit, he recalls that Bell and Noetzel complained about abuse and mistreatment during the first several months at FSP, though he concedes that Bell did not tell him directly. Boatman goes on to offer his personal beliefs formed from this secondhand knowledge. He speculates that Bell could not take

the abuse, oppression, and delays in his CM[6] review and that he "burned out." The only portion of the affidavit that comes close to suggesting firsthand knowledge, or a causal link between the abuse and Bell's decision to enter his waivers, is a sentence stating: "Bell was just so disheartened and said the only way to make it stop was to 'tap out.'" Although purportedly a direct quote from Bell embedded in a paragraph full of Boatman's own inferences, there is no indication that this statement was tied to the timing or substance of Bell's legal decisions, or what exactly he meant by "tap out." Without such context, the statement does not provide reliable or direct evidence that Bell's waivers were influenced by his mistreatment or entered involuntary.

Considered in the context of the record we have, counsel's performance does not fall below an objective standard of

---

6. CM refers to "Close Management," which involves "the separation of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, when the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code R. 33-601.800(1)(a). The *Code* provides the procedures for CM classifications and reviews. *See id.* R. 33-601.800(2), (16).

reasonableness.  As we have recognized, *Strickland* requires us to evaluate "whether counsel's assistance was reasonable considering all the circumstances."  466 U.S. at 688; *see, e.g., Hayward v. State*, 183 So. 3d 286, 297 (Fla. 2015) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (citing *Strickland*, 466 U.S. at 689)).  Here, counsel had two days with the State's discovery materials before Bell entered his waivers.  In that time, even if counsel did review the discovery in full, the nature of the available evidence, namely the recorded interview, does not provide a basis to challenge the voluntariness of Bell's waivers.  And while the affidavits both generally paint a troubling picture of the conditions for inmates with pending capital charges who are housed at FSP, they fail to provide a sufficient connection between the alleged abuse and the voluntariness of Bell's waivers.  Ultimately, neither piece of evidence that Bell points to on postconviction is sufficient to establish deficient performance.

Similarly, Bell fails to show prejudice.  Even if counsel had

uncovered and presented evidence of abuse, there is no reasonable probability that the trial court would have prevented Bell from waiving counsel or a penalty-phase jury, given his unequivocal responses during the waiver colloquies. *See Ruiz,* 536 U.S. at 629 ("[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances." (emphasis omitted)). Bell's subsequent claim that his waivers were influenced by abuse does not undermine the evidence of Bell's ability to understand or appreciate the legal consequences of waiving counsel and a penalty-phase jury at the time of his waiver colloquies. His retrospective rationalization is insufficient. *See Caylor v. State*, 407 So. 3d 379, 384 (Fla. 2025) (holding that a defendant's internal motivations or subsequent realizations do not retroactively negate the understanding of the right to a penalty-phase jury at the time of the waiver), *petition for cert. filed*, No. 25-5184 (U.S. July 16, 2025).

Bell also cannot demonstrate a reasonable probability that he would have received a life sentence if the court had rejected his waivers. Even when represented by counsel, a "defendant has the

right to choose what evidence, if any, the defense will present during the penalty phase." *Figueroa-Sanabria*, 366 So. 3d at 1054 (quoting *Bell*, 336 So. 3d at 217). And Bell could not have been compelled to introduce any additional mitigation beyond what he already offered. *Id.* ("Put plainly, 'a defendant cannot be forced to present mitigating evidence during the penalty phase of the trial.'" (quoting *Grim v. State*, 841 So. 2d 455, 461 (Fla. 2003))). Any speculation to the contrary fails to establish prejudice. *See Johnston v. State*, 70 So. 3d 472, 477 (Fla. 2011) ("Mere speculation that counsel's error affected the outcome of the proceeding is insufficient." (citing *Strickland*, 466 U.S. at 693)).

Since Bell did not allege specific facts establishing both deficient performance and prejudice, he failed to make a facially sufficient claim. The postconviction court's summary denial was appropriate.

## C

Bell's claim that he was deprived of an individualized sentencing due to his waiver of counsel is procedurally barred. A variation of this claim was raised and rejected on direct appeal when Bell unsuccessfully raised several arguments related to the

trial court's handling of mitigating evidence. *Bell*, 336 So. 3d at 216-17. One of which was that he was deprived of an individualized sentencing determination due to the minimal mitigation presented and the trial court's failure to employ the procedures established in *Muhammad*. *Id.* This Court has already determined that Bell received all that was required for an individualized sentencing determination, and a defendant cannot revive a rejected direct appeal claim by repackaging it under a different label in postconviction. *Id.* at 217; *see Barwick v. State*, 361 So. 3d 785, 792-95 (Fla. 2023) (finding that variations of claims that were raised and rejected in prior proceedings are procedurally barred).

Even if not procedurally barred, Bell's claim is without merit. Bell did not waive mitigation, and the sentencing court considered the mitigation evidence offered by Bell. *Bell*, 336 So. 3d at 217. His argument that additional mitigation could have been presented by counsel, had he not entered his waiver, is speculative given this Court's deference to a competent capital defendant's "great control over the objectives and content of [their] mitigation." *Boyd v. State*, 910 So. 2d 167, 189-90 (Fla. 2005) ("Whether a defendant is

- 19 -

represented by counsel or is proceeding pro se, the defendant has the right to choose what evidence, if any, the defense will present during the penalty phase." (citation omitted)). The postconviction court's summary denial was warranted.

## III

In his habeas petition, Bell argues that appellate counsel was ineffective for failing to raise Bell's untimely first appearance under Florida Rule of Criminal Procedure 3.130 as an unpreserved claim of fundamental error. We disagree.

"While the failure to raise unpreserved claims on appeal is not normally a basis for ineffective assistance of appellate counsel, the failure to raise unpreserved claims of fundamental error may be." *Davis v. State*, 383 So. 3d 717, 742 (Fla.) (citing *Wickham v. State*, 124 So. 3d 841, 863 (Fla. 2013)), *cert. denied*, 145 S. Ct. 248 (2024). Fundamental error is error that "reaches down into the validity of the trial itself to the extent that [a death sentence] could not have been obtained without the assistance of the alleged error." *Bush v. State*, 295 So. 3d 179, 212 (Fla. 2020) (quoting *Card v. State*, 803 So. 2d 613, 622 (Fla. 2001)). Considering all the facts, we cannot conclude that appellate counsel was ineffective in not

raising Bell's untimely first appearance as a matter of fundamental error.

Bell—who was of course incarcerated for other crimes throughout the proceedings relevant here—made his first appearance approximately five weeks after the grand jury had returned an indictment. Under Florida Rule of Criminal Procedure 3.130, every arrested person must be taken before a judge for a first appearance within twenty-four hours of arrest. Fla. R. Crim. P. 3.130(a). And we have "remind[ed] the State of its obligation under rule 3.130 to take every arrested person, including those already in custody on other grounds, before a magistrate within twenty-four hours of arrest." *Globe v. State*, 877 So. 2d 663, 672 (Fla. 2004).

The purpose of a first appearance is to inform the defendant of the charges and their rights, and to determine conditions for release. *Chavez v. State*, 832 So. 2d 730, 752 (Fla. 2002). Rule 3.130 does not prescribe what ought to happen if a defendant is not brought before a judge within twenty-four hours. A delay in the first appearance does not automatically lead to release, dismissal of charges, or the suppression of evidence. *See, e.g., id.* at 754 (concluding that a delayed first appearance did not compel

defendant's confession and, thus, the trial court properly denied his motion to suppress); *Globe*, 877 So. 2d at 672 (holding that a delay in following the first-appearance procedures of rule 3.130 must be shown to have induced a confession in order for the confession to be inadmissible, and finding that the delay did not induce the already incarcerated defendant's confession when he was not subject to release, was repeatedly advised of his *Miranda* rights, and made incriminating statements less than twenty-four hours after his arrest); *Keen v. State*, 504 So. 2d 396, 399-400 (Fla. 1987) (holding that the trial court's denial of a motion to suppress was proper in the absence of a showing that the first-appearance delay induced an otherwise voluntary statement), *disapproved in part on other grounds*, *Owen v. State*, 596 So. 2d 985, 990 (Fla. 1992).

While it is undisputed that the State failed to comply with rule 3.130, it is also undisputed that Bell's trial counsel did not preserve an objection. We therefore assess whether the delay, standing alone, amounts to fundamental error. As Bell does not allege that the delay in his first appearance resulted in any prejudice, we are hard-pressed to do so. *Conde v. State*, 860 So. 2d 930, 951-52 (Fla. 2003) (instructing that prejudice due to a delay of an initial

appearance must be "proven on a case-by-case basis").  The State's delay is regrettable, but it does not call into question the fundamental legitimacy of Bell's trial, and neither trial counsel's failure to object, nor appellate counsel's having declined to raise the delay as an unpreserved error, undermines confidence in the result of his case.  *See Freeman v. State*, 761 So. 2d 1055, 1070 (Fla. 2000) ("Appellate counsel cannot be ineffective for failing to raise an issue which is without merit.").

**IV**

For the foregoing reasons, we affirm the order summarily denying Bell's postconviction motion and deny habeas relief.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Lafayette County,
        David W. Fina, Judge – Case No. 342019CF000055CFBXMX
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, Ali Shakoor, Assistant Capital Collateral Regional Counsel, and Adrienne Joy Shepherd, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

for Appellant/Petitioner

James Uthmeier, Attorney General, and Jason W. Rodriguez, Senior Assistant Attorney General, Tallahassee, Florida,

for Appellee/Respondent